

*Issues & Appeals*

September 17, 2024

Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

    Re:    Letter brief in *In re: Credit Default Swaps Antitrust Litigation*, No. 24-635

Dear Ms. Wolfe:

"More than a century ago, the Supreme Court held that postjudgment orders are usually subject to appellate review." *Amara v. Cigna Corp.*, 53 F.4th 241, 249 (2d Cir. 2022). Injunctions enforcing class-action settlement agreements are a common example: This Court has repeatedly exercised appellate jurisdiction over orders little different than the one here. *Tronox* does not—and could not—hold otherwise.[1]

### I.    The district court's injunction is a reviewable final order.

The banks moved the district court for an injunction barring the New Mexico funds from pursuing their claims. And the court granted that injunction. There's nothing left for the district court to do. Its injunction is thus a "final decision[]" over which this Court has jurisdiction under 28 U.S.C. § 1291.

"Though we look to general finality principles to determine postjudgment finality, these principles apply differently in the postjudgment context." *Amara*, 53 F.4th at 250. Postjudgment, there is "little danger of interference with continuing trial court proceedings, and equally little danger of repetitious appellate consideration of related issues." *Id.* But "there is a real risk that" if appeal is not permitted, "all opportunity for review will be lost." *Id.* "Thus, in assessing postjudgment finality, [courts] give less weight to the inconvenience and costs of piecemeal review and correspondingly greater weight to the danger of denying justice." *Id.* That's why the "Supreme Court has long held that most trial court decisions resolving important, but ancillary, matters that arise after the entry of judgment are subject to appellate review." *Id.*

"Mindful of these principles," the rule in this Circuit is "that a district court's postjudgment order is final when it has finally disposed of a question," and there are no "related issues" pending before the court. *Id.* at 250–51. Consistent with this rule, this Court and others have repeatedly exercised jurisdiction over orders enforcing settlement agreements and consent decrees. *See, e.g., In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d

---

[1] Unless otherwise noted, all internal quotation marks, citations, alterations, brackets, and ellipses have been omitted from quotations throughout this letter brief.

1

113, 125 n.9 (2d Cir. 2011) (citing cases and holding that postjudgment order concluding that class-action settlement precluded plaintiffs' claims presented "an appealable question to this Court"); *Hendrickson v. United States*, 791 F.3d 354, 357 n.1 (2d Cir. 2015) (order enforcing prior settlement "present[ed] an appealable question"); *Burgess v. Citigroup Inc.*, 624 F. App'x 6, at *7 (2d Cir. 2015); *Gimbel v. UBS Fin. Servs., Inc.*, 309 F. App'x 469, 470 (2d Cir. 2009); *see also, e.g.*, *Flores v. Garland*, 3 F.4th 1145, 1153-54 (9th Cir. 2021) (appellate jurisdiction existed over order requiring government to comply with settlement agreement); *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999); *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 912 F.2d 819, 825 (5th Cir. 1990); *DeLoach v. Lorillard Tobacco Co.*, 391 F.3d 551, 557, 559 (4th Cir. 2004).

The order here is no different. The district court "finally disposed" of the only question before it: whether the New Mexico funds should be enjoined from pursuing their claims. There is nothing more pending before the court. Its injunction is thus a final order over which this Court has jurisdiction.

*Tronox* doesn't—and under the prior-panel rule couldn't—hold otherwise. There, the district court's order "was issued in the context of a pending contempt motion," but the court had not yet found contempt or issued sanctions. *In re Tronox Inc.*, 855 F.3d 84, 96 (2d Cir. 2017). The law has long been clear that contempt proceedings are not final until they culminate in an assessment of sanctions. *Id.*; *see Amara*, 53 F.4th at 251.

Unlike in *Tronox*, the order here was not issued in the context of contempt proceedings. The banks didn't seek contempt for violating a prior order; they sought a new injunction. And they were granted one. Unlike contempt proceedings where contempt has not been adjudicated, there is nothing that could render the order here more final.[2] That brings this case within the ambit of cases like *American Express* and *Hendrickson*, in which this Court has explicitly held that it has appellate jurisdiction to review orders enforcing settlements.

Indeed, absent appellate review under these circumstances, "there is a real risk that all opportunity for review will be lost." *Amara*, 53 F.4th at 250. Here, for example, if the New Mexico funds comply with the order, it's unclear when or how they could ever seek review. *Cf. Flores*, 3 F.4th at 1153. And if they disobey it, the New Mexico district court is likely to dismiss their claims based on the Southern District's order anyway—at

---

[2] That distinguishes this case from, for example, the clarification orders in *Diageo N. Am., Inc. v. W.J. Deutsch & Sons Ltd.*, 2024 WL 2712636, at *3 (2d Cir. May 28, 2024). There, the infringing party in a trademark dispute was in an ongoing process of seeking guidance from the district court on how to redesign its product to comply with a pre-existing injunction already specifically tailored to that party. That process presented the "prospect [of] further proceedings" as the party continued to work towards designing a non-infringing product. *Amara*, 53 F.4th at 251.

which point, again, it is unclear how, when, or where they could seek review. Would they appeal the Southern District's ruling to the Tenth Circuit at the end of the New Mexico litigation? Nor could they have sought review of this question when the settlement was entered. As the district court explained at the time, any questions about how a settlement release will apply to hypothetical future claims must be left to when those claims are brought. JA-575–76; *see Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 257–58 (2d Cir. 2001), *aff'd in part, vacated in part on other grounds* 539 U.S. 111 (2003).[3]

That, too, makes this case importantly different from the contempt proceedings in *Tronox*. There, the plaintiffs were active participants in negotiating the settlement and injunction, and their precluded claims had already been brought when the settlement was entered. 855 F.3d at 111. They therefore already had a meaningful opportunity for appellate review at that time. The absent class members in this case, whose claims had not even been discovered when the settlement was entered, did not have the same opportunity. This was therefore their first (and last) chance to adjudicate the relevant preclusion doctrines. Given that "a practical rather than a technical construction of finality is especially appropriate in the post-judgment context"—and that the key consideration postjudgment is availability of appellate review—the lack of opportunity for absent class members to obtain review in the class-settlement preclusion context cautions against overreading *Tronox* to displace this Court's case law reviewing such decisions. *Amara*, 53 F.4th at 250.[4]

## II. The district court either granted an injunction or modified a prior injunction, either of which is reviewable.

Even if the order were not final, it would still be reviewable because it "grant[ed]" an "injunction" or, at the very least, "modif[ied]" an existing one. 28 U.S.C. § 1292(a)(1).

**A.** The order states that "the New Mexico plaintiffs" are "hereby"—i.e. by that order—"enjoined from pursuing any claims against the Banks in the New Mexico Action

---

[3] The Federal Rules confirm this. "Every order granting an injunction … must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. Pro. 65(d)(1). When the boycott litigation initially settled, the district court could not have made these statements with respect to the New Mexico funds' auction-rigging claims—or any other specific hypothetical future claims. That's because "the determination of whether [any future] claim pleaded in a separate lawsuit is predicated on sufficiently similar facts as the class action claim to be barred . . . is inherently an individualized, fact-specific one" that cannot be made until the claim actually arises. JA-575–76.

[4] Expanding *Tronox* beyond the contempt context would also conflict with this Court's longstanding rule that "substantive post-judgment orders" issued in cases with a

3

for any alleged violation of law based on conduct occurring before June 30, 2014." SA-2. And if that weren't enough, the order reiterates that the plaintiffs are "permanently barred and enjoined" from pursuing a long list of specific claims. *Id.* By definition, then, the court granted an injunction. *See* Enjoin, Black's Law Dictionary (12th ed. 2024) (defining "enjoin" as "to legally prohibit or restrain by injunction"). Even if that injunction is interlocutory, this Court has jurisdiction over it. 28 U.S.C. § 1292(a)(1); *Commodity Futures Trading Comm'n v. Walsh*, 618 F.3d 218, 224 (2d Cir. 2010) ("[O]rders that explicitly grant, continue, modify, refuse or dissolve injunctions ... thereby meet the plain terms of the statute.").

Again, *Tronox* does not hold otherwise. There, the district court did not grant an injunction. It simply stated that the plaintiffs were "ORDERED to abide by the terms of [an] Injunction" that already existed. *In re Tronox Inc.*, 549 B.R. 21, 30, 56 (S.D.N.Y. 2016). The statute providing appellate jurisdiction over a grant of an injunction, therefore, did not apply in *Tronox*. It applies here.

**B.** Even if the district court's order "enjoin[ing]" the New Mexico funds somehow did not "grant[ ] [an] injunction" within the meaning of 28 U.S.C. § 1292(a)(1), at the very least, it "modif[ied]" the injunction that the court entered in 2016 when the boycott litigation settled. *Id.* That initial injunction was limited by the identical factual predicate, adequate representation, and notice doctrines. In barring the New Mexico funds claims here, the court has effectively removed those limitations.

To "determine if [an] [i]njunction has been modified," this Court evaluates whether the district court "extended the [i]njunction beyond its original reach." *Tronox*, 855 F.3d at 97–98. This question is reviewed "*de novo*." *Id.* at 98. And while the district court's views of the "nature" and "language" of an injunction "deserve deference," when an injunction's scope "is tied to a term defined by law"—like the identical factual predicate or adequate representation doctrines here—"the court's conclusion is a legal one and is reviewed *de novo*." *Id.* at 99 & n.20.

There's no dispute that the district court's 2016 injunction was bounded by the identical factual predicate, adequate representation, and adequate notice doctrines. Indeed, when objectors challenged the scope of the release at the time, the court

---

"protracted remedial phase" are reviewable. *United States v. Apple Inc.*, 787 F.3d 131, 137 (2d Cir. 2015). Otherwise, appellate review would be sharply curtailed over district courts overseeing, for example, institutional reform litigation involving prisons or schools. *See Amara*, 53 F.4th at 250; *see also Flores*, 3 F.4th at 1153–54. The result would be that so long as "the government complies with the [order], … it is unlikely to have any opportunity to appeal." *Flores*, 3 F.4th at 1153. That has never been the law. *See Amara*, 53 F.4th at 250.

4

explained that "class action releases may include claims not presented … *as long as* the released conduct arises out of the 'identical factual predicate' as the settled conduct." JA-575-76 (emphasis added). Similarly, it explained, "[t]he scope of a release is also limited by the adequacy of representation doctrine." JA-576. And "[b]ecause a settlement may bar future claims, it is essential that there be adequate notice of the effect of the release and compensation for released claims." *Id.* These limitations are consistent with the bedrock principle that "contractual language must be interpreted in light of existing law, the provisions of which are regarded as implied terms of the contract." 11 Williston on Contracts § 30:19 (4th ed. 2024); *see also Tronox Inc.*, 855 F.3d at 107 (courts "construe terms of an injunction according to the general interpretive principles of contract law"). Indeed, these entire proceedings have been litigated based on the shared recognition by the parties and the district court that the release is limited by these doctrines.

As a result, under *Tronox*, "[t]he merits" of the New Mexico funds' arguments that precluding their claims runs afoul of these doctrines merge into "the jurisdictional question." 855 F.3d at 99. By applying the release beyond the original scope permitted by those doctrines, the district court "extended the [i]njunction beyond its original reach." *Id.* at 97–98. That modification of the injunction is reviewable. *Id.*

### III. The collateral order doctrine also permits review.

Finally, even if the district court's order were not appealable on the grounds above, it meets all three criteria for review under the collateral order doctrine. *First*, the order "conclusively determine[d] the disputed question." *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 146 (2d Cir. 2013). *Second*, the district court "resolve[d] an important issue completely separate from the merits of the action." *Id.* Whether precluding the New Mexico funds' claims is consistent with the identical factual predicate, adequate representation, and adequate notice doctrines is an entirely distinct question from liability on the merits in either the New York boycott litigation or the New Mexico auction-rigging suit. *Third*, as explained above, the order is "effectively unreviewable on appeal from a final judgment." *Id.*; *see, e.g.*, *Parsons v. Ryan*, 912 F.3d 486, 502–503 (9th Cir. 2018) (applying collateral order doctrine to permit review of order enforcing settlement agreement); *Jensen v. Minn. Dep't of Hum. Servs.*, 897 F.3d 908, 912 (8th Cir. 2018) (similar).[5]

---

[5] *Tronox*, in dictum in a footnote addressing an argument that the parties had not raised, asserted that the collateral order doctrine did not apply there because, in its view, the order was "at the heart of the merits of the proceedings" and, as it was issued via contempt proceedings, it was not effectively unreviewable. 855 F.3d at 96 n.17. Here, the district court's order does not adjudicate the merits of any lawsuit, and the order was not "issued in the context of a pending contempt motion." *Id.* at 96.

Respectfully submitted,

*/s/ Jennifer Bennett*
JENNIFER BENNETT
GUPTA WESSLER LLP
505 Montgomery Street, Suite 625
San Francisco, CA 94111
(202) 888-1741
*jennifer@guptawessler.com*

*Counsel for Interested Parties-Appellants*