SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

———

TEL: (202) 371-7000

FAX: (202) 393-5760

www.skadden.com

DIRECT DIAL
202-371-7370
EMAIL ADDRESS
SHAY.DVORETZKY@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

September 17, 2024

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

> RE: *In re: Credit Default Swaps Antitrust Litigation*, No. 24-635 (2d Cir.): Defendants-Appellees' supplemental letter brief addressing appellate jurisdiction and the impact of *In re Tronox Inc.*, 855 F.3d 84 (2d Cir. 2017)

Dear Ms. Wolfe:

The Court should dismiss this appeal, because *In re Tronox Inc.*, 855 F.3d 84 (2d Cir. 2017), makes clear that it lacks appellate jurisdiction. This appeal challenges an order enforcing an anti-suit injunction entered in 2016 as part of a class action settlement barring Appellants and other class members from pursuing released antitrust claims. SA1-19. Appellants invoke (Br. 3) this Court's jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1). But the Court lacks jurisdiction under § 1291 because Appellants have not "refuse[d] to comply" or been "sanctioned" for refusing to comply with the enforcement order, meaning the relevant lower court proceedings are not final. *Tronox*, 855 F.3d at 97. And the Court lacks jurisdiction under § 1292(a)(1) because the enforcement order did not grant a new injunction or modify or continue the 2016 injunction. *See id.* at 97-98. Because no other basis for appellate jurisdiction exists, the Court should dismiss this appeal for lack of jurisdiction.

## I. The Court lacks appellate jurisdiction under § 1291.

Section 1291 gives this Court jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. *Tronox* holds that an order enforcing an injunction does not become final until the enjoined parties "refuse to comply and are sanctioned."

855 F.3d at 97. That has not happened here, so the enforcement order Appellants challenge is not final and appealable under § 1291.

**A.** *Tronox* holds that an order enforcing an injunction without imposing contempt sanctions is not a final, appealable order under § 1291. In *Tronox*, the defendant secured an anti-suit injunction as part of a settlement in a bankruptcy proceeding. *Id.* at 92. Later, several plaintiffs tried to reinstate claims against the defendant that were covered by the anti-suit injunction. *Id.* at 92-93. The defendant moved to enforce the injunction and sought contempt sanctions. *Id.* at 93-94. The district court granted the defendant's motion to enforce the injunction and ordered the plaintiffs to dismiss their claims. *Id.* at 94. But the court did not order sanctions, instead concluding that the defendant had abandoned the sanctions request. *Id.*

Plaintiffs appealed, and this Court held that it lacked jurisdiction to review the enforcement order under § 1291. Because the order "made no contempt finding, 'much less an assessment of sanctions,'" the order was "not 'final' as contemplated by § 1291." *Id.* at 96. It did not matter that the defendant "'abandoned' its request for a contempt finding or sanctions" before the district court. *Id.* at 97. Instead, the Court held, injunction enforcement orders "reach final adjudication" only when the plaintiffs "refuse to comply and are sanctioned." *Id.* at 96-97. Any other rule would "require[]" this Court "to entertain appeals every time a district court interpreted or issued an order enforcing a final injunction," threatening to leave the Court "besieged by successive appeals in injunctive proceedings," and "render[ing]" § 1292(a)(1) "at least partially[] superfluous." *Id.* at 97.

**B.** Here, the district court's enforcement decision is not "final" under § 1291. As in *Tronox*, the district court "made no contempt finding, 'much less an assessment of sanctions,'" because Appellants have not "refuse[d] to comply" with the order. *Id.* at 96-97. Unless or until that happens, the enforcement proceedings are "not 'final' as contemplated by § 1291." *Id.* at 96. It does not matter that the Banks never sought sanctions in the district court. *Tronox* held that unless there is a contempt *finding*, whether or not there was a request for contempt is "inconsequential" in determining whether an enforcement order is final, and arguments to the contrary "miss the point." *Id.* at 97.

## II.    This Court lacks appellate jurisdiction under § 1292(a)(1).

Section 1292(a)(1) confers appellate jurisdiction over "[i]nterlocutory orders of the district courts … granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1). The district court's enforcement order does none of those things. In particular, it does not "modify" the 2016 injunction because it did not "extend the [i]njunction beyond its original reach." *Tronox*, 855 F.3d at 98. The district court's order is thus not appealable under § 1292(a)(1).

**A.** The district court's enforcement order did not modify the 2016 injunction.

**1.** *Tronox* held that an order "modif[ies]" an injunction if it effectively "extend[s] the [i]njunction beyond its original reach," but not if the order is "merely interpretive." *Id.* at 98. To determine whether an enforcement order extends an underlying injunction, the Court assesses whether the district court "properly construed the [i]njunction to bar the … Plaintiffs' claims." *Id.* But because the district court is best positioned to assess "what it meant when it employed [the] language" in the underlying injunction, this Court's review is "limited." *Id.* at 98-99. The district court's "interpretation is entitled to deference and will not constitute a modification unless it is an obvious or blatant misinterpretation" of the injunction. *Id.* at 99. Only "term[s] defined by law" are subject to de novo review. *Id.* A more "searching … merits inquiry at the jurisdictional stage … 'would collapse the jurisdictional inquiry into a decision on the merits, thwarting the purpose of § 1292(a)(1).'" *Id.* at 98. This Court has consistently adhered to *Tronox*'s approach in subsequent cases dismissing appeals of injunction-related orders. *See, e.g.*, *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024) (wording differences between enforcement order and injunctions were not modifications because they were "merely interpretations of the original preliminary injunction"); *Diageo North America, Inc. v. W.J. Deutsch & Sons Ltd.*, Nos. 22-2106, 22-3063, 22-3120, 2024 WL 2712636, at *4 (2d Cir. May 28, 2024) (similar).

**2.    a.** The district court's conclusion that its 2016 injunction encompasses Appellants' New Mexico claims is correct under the plain terms of the injunction, and is certainly not "an obvious or blatant misinterpretation" of the injunction. *Tronox*, 855 F.3d at 99.

This Court construes an injunction "according to the general interpretive principles of contract law." *Id.* at 107. The SDNY Action settlement agreement from which the 2016 injunction arises "defines certain pertinent terms used in the [i]njunction," meaning that the Court must look to that agreement. *Id.* Because the settlement agreement contains a New York choice of law clause, JA447, the Court "must interpret" its "terms … in accordance with New York law." *Tronox*, 855 F.3d at 107. "New York law," in turn, "requires" the Court "to interpret the Settlement Agreement 'so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed.'" *Id.*

The 2016 injunction unequivocally covers the claims that Appellants assert in New Mexico because those claims fall within the plain meaning of the "Released Claims" in the injunction. To start, the injunction provides that "the Releasing Parties" in the SDNY Action "shall forever be enjoined from prosecuting in any forum any Released Claim against" the Banks (among others). Dist. Ct. Doc. 542, ¶ 11. The capitalized terms in the injunction have "the same meanings as in the [parties' settlement] Agreement." *Id.* ¶ 1. That agreement defines "Releasing Parties" as "each Settlement Class Member"—a group that includes Appellants. JA418. "Released Claim" is defined to include, among other things, "claims … relating in any way to" (1) "any conduct by" the Banks "that … could be alleged to … have been anticompetitive relating to, arising out of, or affecting or potentially affecting any CDS Transaction"; and (2) any "joint conduct relating to potential or actual involvement, participation, or ownership in any organization, entity, working

group or other group related in any way to CDS or CDS Transactions, including, without limitation, Markit … and ISDA." JA424-25. CDS Transaction is defined broadly as "any purchase, sale, trade, assignment, novation, unwind, termination, or other exercise of rights or options with respect to any CDS." JA414-15.

Appellants' New Mexico claims "relat[e]" to supposed "anticompetitive" "conduct" that "could be alleged to" "affect[]" CDS transactions, including the "termination" or "other exercise of rights . . . with respect to any CDSs." JA414-15, 424. As Appellants themselves explain, their complaint "allege[s] that the [B]anks … control the auctions used to settle credit default swaps" and have "been secretly rigging them" by "collud[ing] to 'skew' the auctions in whatever 'direction' would be 'serve their financial interests.'" Br. 16 (alteration adopted).

Appellants' New Mexico claims also "relat[e]" to alleged "joint conduct relating to … involvement" "in any" "working group," "Markit" or "ISDA." JA425. Appellants' complaint alleges that the Banks met in a secret "dealer-only 'working group'" that "hard-wire[d]" their control into the process for settling CDSs. JA812-16. It alleges that the Banks conspired with Markit to develop a CDS auction protocol that "rigged" the process in the Banks' favor. JA720-21, 824-25. And it alleges that the Banks used their control over ISDA to ensure that only the Banks have the right to bid in CDS auctions. JA732-35.

In sum, Plaintiffs' claims are "Released Claims" covered by the 2016 injunction. The point is so clear that Appellants have never, at any stage of this litigation, argued that their claims are not encompassed by the terms of the injunction or release.

**b.** The text of the enforcement order also confirms that the district court did not modify the 2016 injunction. The enforcement order "enjoined" Appellants "from pursuing any claims against the Banks in the New Mexico Action for any alleged violation of law based on conduct occurring before June 30, 2014," and further enjoined Plaintiffs "from prosecuting against the Banks" Released Claims. *Compare* JA423 (injunction), *with* SA2-3 (enforcement order using the long-form definition of "Released Claims" from the settlement agreement, rather than the term "Released Claims"). Put differently, the court (1) concluded that the 2016 injunction encompasses Appellants' New Mexico claims; (2) ordered Appellants not to prosecute their existing claims to the extent those claims rest on released conduct from before June 30, 2014 (the release's cutoff date, *see* JA423); and (3) ordered Appellants not to pursue new Released Claims covered by the 2016 injunction. The order thus simply enforced the district court's 2016 injunction and did not "extend[] the [i]njunction beyond its original reach." *Tronox*, 855 F.3d at 98.

**3.** The Court need not—and should not—resolve any of Appellants' merits arguments to determine whether it has jurisdiction under § 1292(a)(1). *Tronox* makes clear that the Court's only task in determining whether an enforcement order modifies a prior injunction is to assess whether the district court plausibly interpreted the injunction to

reach the plaintiffs' claims. *Id*. at 99. Conducting any more "searching of a merits inquiry at the jurisdictional stage … 'would collapse the jurisdictional inquiry into a decision on the merits, thwarting the purpose of § 1292(a)(1).'" *Id*. at 98. Occasionally, interpreting the text of an injunction might raise "merits" questions that "are … unavoidably linked to the jurisdictional question," such as when the injunction incorporates "a term defined by law" that the Court must construe to grasp the injunction's scope. *Id*. at 99. But the Court must not reach merits issues that aren't relevant to whether the district court modified its injunction unless it first determines that it has jurisdiction. *Id*. at 98. This Court has scrupulously avoided improper merits analyses when applying *Tronox* to dismiss other appeals. *See, e.g.*, *Diageo*, 2024 WL 2712636, at *4 (rejecting request to decide whether proposed product redesign complied with injunction because "[n]othing in the record suggests that the district court's … interpretation [of the injunction was] unreasonable").

Here, as explained, Appellants do not contest that the plain text of the 2016 injunction encompasses their New Mexico claims. And the injunction does not incorporate a term defined by law. Instead, Appellants argue that whatever the injunction says, they aren't bound by it under due process and waiver principles. Those arguments are wrong for the reasons the Banks' brief explains. But the dispositive point here is that none of Appellants' arguments addresses whether the district court modified the 2016 injunction, much less contends that Appellants' claims fall outside the injunction's plain meaning. Because the enforcement order was "merely interpretive," *Tronox*, 855 F.3d at 98, it did not "modify[]" the injunction and thus did not trigger jurisdiction under § 1292(a)(1).

**B.** Nothing else about the enforcement order triggers appellate jurisdiction under § 1292(a)(1). The order did not "grant" a new injunction any more than it "modified" the 2016 injunction—it enforced the preexisting 2016 injunction. Orders enforcing prior injunctions are not appealable under § 1292(a)(1) because their "effect" is "not to grant new injunctive relief," even if they state that plaintiffs "are enjoined" based on that preexisting injunction. *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 814, 820 (11th Cir. 2010); *see Tronox*, 855 F.3d at 96 (finding *Thomas's* holding that enforcement order "did not grant or modify an injunction under § 1292(a)(1)" "instructive").

The enforcement order also did not "continue" the 2016 injunction. "An order that continu[es] an injunction is one that extends the duration of the injunction, that is, one entered in circumstances where, without such order, the injunction would stand dissolved by lapse of the time fixed in the original order." *Tronox*, 855 F.3d at 97 n.18. Here, by contrast, the 2016 injunction "is permanent," *id.*, meaning that the district court's enforcement order did not continue it.

\*   \*   \*

*Tronox* makes clear that this Court lacks appellate jurisdiction under 28 U.S.C. § 1291 and 1292(a)(1). There is no other basis for appellate jurisdiction. The Court should dismiss the appeal.

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky

*Counsel for Defendants-Appellees
Citibank, N.A., & Citigroup Global
Markets Inc. — Submitted on behalf
of all Appellees*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this letter brief complies with the type-volume limitation of the Court's September 10, 2024, Order, Doc. 134.1, because the body of the letter brief is five single-spaced pages.

Dated: September 17, 2024          */s/ Shay Dvoretzky*

                                   Shay Dvoretzky

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the Second Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: September 17, 2024          */s/ Shay Dvoretzky*

                                   Shay Dvoretzky